**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CAMERON SHAWN JACKSON,     ) | |
|     ) | Civil Action No. 08 - 1674 |
| Petitioner,     ) | |
|     ) | District Judge Joy Flowers Conti |
| v.     ) | Magistrate Judge Lisa Pupo Lenihan |
|     ) | |
| DAVID VERANO; THE ATTORNEY     ) | |
| GENERAL OF THE STATE OF     ) | |
| PENNSYLVANIA; THE DISTRICT     ) | |
| ATTORNEY OF THE COUNTY OF     ) | |
| ALLEGHENY,     ) | |
|     ) | |
| Respondents. | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I. RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

## II. REPORT

Petitioner, Cameron Shawn Jackson, a state prisoner incarcerated at the State Correctional Institution at Smithfield, Pennsylvania, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction and sentence in the Court of Common Pleas of Allegheny County for murder in the third degree. For the reasons that follow, the Petition should be denied.

### A. Relevant Facts

The record evidence reveals the following.

> The evidence presented at trial established that [Appellant] and the victim, Dionne Scott, had a long-time romantic relationship and had two children together. [Appellant] had a history of assaulting Ms. Scott throughout their relationship and had violated numerous PFA orders obtained by Ms. Scott. In the evening of October 17, 2003, Ms. Scott, [Appellant], and Ms. Scott's brother-in-law, Reginald Hurt,

were at Ms. Scott's home socializing, drinking, and smoking crack cocaine, while Ms. Scott's three (3) children, two of whom were fathered by [Appellant], were upstairs sleeping. Mr. Hurt eventually left, while [Appellant] remained with Ms. Scott. At some point in the early morning hours of October 18, 2003, an argument ensued between Ms. Scott and [Appellant]. [Appellant] grabbed Ms. Scott by the arms, threw her onto the couch, and said "the next time I go to jail, it is going to be for something good.". [Appellant] then sat down on a chair in the room and began to think about killing Ms. Scott. He then noticed the vacuum cleaner, grabbed the cord, wrapped it around Ms. Scott's neck, and strangled her until she was dead. [Appellant] then left the house, bought some crack cocaine and returned to Ms. Scott's house where he smoked it. He wrote a note addressed to Magistrate Alberta Thompson, which he left near Ms. Scott's body, and then went to the home of his cousin, Charlene Ramsey. He told Ramsey there had been an accident, he had fought with Ms. Scott, and he thought he might have killed her. [Appellant's] family subsequently called the police. [Appellant] was arrested and eventually confessed to killing Ms. Scott.

Commonwealth v. Jackson, 900 A.2d 936, 938 (Pa. Super. 2006).

Following a jury trial, Petitioner was convicted of third-degree murder and was sentenced to a term of incarceration of from twenty (20) to forty (40) years. Appellant filed a timely motion to modify his sentence, which the Trial Court denied on December 9, 2004. Petitioner filed a timely notice of appeal and on May 31, 2006, the Superior Court of Pennsylvania affirmed his judgment of sentence. Petitioner did not file a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania.

On September 6, 2006, Petitioner filed a *pro se* petition for relief under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. § 9542. Following appointment of counsel, on May 1, 2007, the PCRA Court denied Petitioner's PCRA Petition. Petitioner filed a timely Notice of Appeal and on February 4, 2008, the Superior Court of Pennsylvania affirmed the Trial

Court's determination denying Petitioner PCRA relief. On July 11, 2008, the Supreme Court of Pennsylvania denied Petitioner's Petition for Allowance of Appeal.

Having completed his collateral attack in the state courts, Petitioner filed with this court a petition for writ of habeas corpus pursuant to 28 U.S.C.§ 2254 raising the following claims.

1.      Trial Court erred in permitting the Commonwealth to introduce evidence of prior bad acts.

2.      Sentence is manifestly excessive as well as the fact that the sentencing guidelines are fundamentally unfair.

3.      The evidence was insufficient to support a guilty verdict of murder in the third degree.

4.      Appellate counsel was ineffective for failing to challenge Petitioner's right to a jury of his peers.

He raised substantially similar claims in his direct appeal and during his PCRA proceeding.

## B. Principles of Habeas Corpus Review

1.      <u>Exhaustion Requirement</u>

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state *habeas* proceedings, *mandamus* proceedings, or other available procedures for judicial review. *See, e.g.*, <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989); <u>Doctor v. Walters</u>, 96 F.3d 675, 678 (3d Cir. 1996); <u>Burkett v. Love</u>, 89 F.3d 135, 137 (3d Cir. 1996). Moreover, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court and highest court before exhaustion will be considered satisfied. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838 (1999).

The petitioner has the burden of establishing that exhaustion has been satisfied. <u>Ross v. Petsock</u>, 868 F.2d 639, 643 (3d Cir. 1989); <u>O'Halloran v. Ryan</u>, 835 F.2d 506, 508 (3d Cir. 1987).

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claims prior to exhaustion when no appropriate state remedy exists. <u>Christy v. Horn</u>, 115 F.3d 201, 206 (3d Cir. 1997); <u>Doctor</u>, 96 F.3d at 681; <u>Carter v. Vaughn</u>, 62 F.3d 591, 594 (3d Cir. 1995). A petitioner shall <u>not</u> be deemed to have exhausted state remedies, however, if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c).

An application for a writ of habeas corpus may be denied on the merits, however, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State. 28 U.S.C. § 2254(b)(2).

2.    <u>Procedural Default Doctrine</u>

Beyond questions of exhaustion, a federal court may be precluded from reviewing claims under the "procedural default doctrine." <u>Gray v. Netherland</u>, 518 U.S. 152 (1996); <u>Coleman v. Thompson</u>, 501 U.S. 722, 732 (1991); <u>Doctor</u>, 96 F.3d at 678; <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 678 (3d Cir. 1996). Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system and, in turn, it is based upon the "independent and adequate state law grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. <u>Coleman v. Thompson</u>, 501 U.S. at 750.

A state's procedural rules are entitled to deference by federal courts; a petitioner's violation of a state procedural rule may constitute an independent and adequate state law ground for denial of federal review of habeas claims under the procedural default doctrine. *Id.*; Sistrunk, 96 F.3d at 673. Moreover, violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to invoke the procedural default doctrine even where no state court explicitly has concluded that a petitioner is procedurally barred from raising his claims. Glass v. Vaughn, 65 F.3d 13, 15 (3d Cir. 1995), *cert. denied*, 516 U.S. 1151 (1996); Carter, 62 F.3d at 595. However, the procedural default doctrine only applies when a state procedural rule is consistently or regularly applied. Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997) (quoting Johnson v. Mississippi, 486 U.S. 578, 588-89 (1988)).[1] A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: 1) "cause" for the default *and* "actual prejudice" as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750; Carter, 62 F.3d at 595.

Finally, the United States Court of Appeals for the Third Circuit has instructed that a petition containing exhausted and unexhausted but procedurally barred claims is not a mixed petition requiring dismissal under Rose v. Lundy, 455 U.S. 509 (1982). *See* Wenger v. Frank, 266 F.3d 218, 227 (3d Cir. 2001). Instead, the Court of Appeals held that the district court should review the merits of the exhausted claims but must not decide the merits of the claims that are barred under the procedural default doctrine. *Id.*

---

1. *See also* Doctor, 96 F.3d at 675 (the state rule must be firmly established and regularly followed before it can be considered an independent and adequate state law ground sufficient to foreclose federal court review under the procedural default doctrine).

3.      Standard of Review

In describing the role of federal habeas proceedings, the Supreme Court of the United States,

in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary
> avenue for review of a conviction or sentence.... The role of federal
> habeas proceedings, while important in assuring that constitutional
> rights are observed, is secondary and limited. Federal courts are not
> forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.

No. 104-132, 110 Stat. 1214, April 24, 1996, (AEDPA), which further "modified a federal habeas

court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and

to ensure that state-court convictions are given effect to the extent possible under law." Bell v.

Cone, 535 U.S. 685, 693 (2002).

Amended Section 2254 of the federal habeas corpus statute provides the standard of review

for federal court review of state court criminal determinations and provides, in relevant part, as

follows:

> (d)  An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim –
>
> > (1)  resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of the
> > evidence presented in the State Court proceeding.

28 U.S.C.§ 2254(d).

"A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir.2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Few state court decisions will be "contrary to" Supreme Court precedent. "Clearly established Federal law" should be determined as of the date of the relevant state-court decision. Greene v. Palakovich, Civil No. 07-2163, 2010 WL 2134575 (3d Cir. May 28, 2010).

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular … case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Id. (quoting Williams, 529 U.S. at 407).

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. Id. (citing Marshall v.

Lonberger, 459 U.S. 422, 433 (1982)).  Where the state court fails to adjudicate or address the merits of a petitioner's claims, unless procedurally defaulted, the federal habeas court must conduct a *de novo* review over pure legal questions and mixed questions of law and fact.  Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).

## C. Prior Bad Acts

Petitioner's first claim is that the Trial Court erred in permitting the Commonwealth to introduce evidence of prior bad acts.  Such evidence generally is not admissible if offered merely to show bad character or a propensity for committing bad acts.  Commonwealth v. Simmons, 541 Pa. 211, 240, 662 A.2d 621, 635 (1995), *cert. denied*, 576 U.S. 1128 (1996).  Exceptions to this general proscription exist in special circumstances where the evidence is relevant for some other legitimate purpose and not merely designed generally to prejudice the defendant by showing him to be a person of bad character.  *Id.*  Two of these exceptions allow evidence of prior, bed acts to be used to show a common plan or scheme and/or to show intent or motive.  However, recognizing that evidence of prior criminal acts has the potential for misunderstanding on the part of the jury, Pennsylvania law holds that such evidence must be accompanied by a cautionary instruction that fully and carefully explains to the jury the limited purpose for which that evidence has been admitted.  Commonwealth v. Richter, 711 A.2d 464 (Pa. 1998); Commonwealth v. Elliott, 549 Pa. 132, 700 A.2d 1243 (1997), *cert. denied*, 524 U.S. 955 (1998).   Notwithstanding, the failure to request or give such cautionary instructions does not automatically require reversal of a conviction.  Rather, a court must engage in a "harmless error" analysis.  Commonwealth v. Foy, 531 Pa. 322, 326-28, 612 A.2d 1349, 1352 (1992); Commonwealth v. Sanchez, 407 Pa. Super. 234, 240-42, 595 A.2d 617, 621 (1991), *appeal denied*, 529 Pa. 668, 605 A.2d 333 (1992).  An error may be harmless

where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict. Sanchez, 595 A.2d at 621 (citing Commonwealth v. Duffey, 519 Pa. 348, 365-366, 548 A.2d 1178, 1186 (1988)).

This issue was raised on direct appeal and decided as follows by the Superior Court.

Regarding the evidence of Appellant's prior bad acts, Appellant contends it was improper for the trial court to permit several police officers to testify about the pattern of domestic abuse which existed between Appellant and the victim FN4 and Appellant's repeated violation of numerous Protection From Abuse (PFA) orders. FN5 Specifically, Appellant contends that evidence relating to the parties' history of domestic abuse and prior PFA orders was improper since Appellant readily admitted he killed the victim and the only reason the Commonwealth offered the evidence was to prove Appellant's propensity for criminal behavior. We find no merit to this claim.

FN4. A review of the testimony cited by Appellant reveals that the police officers consistently testified they were dispatched to the parties' residence for domestic disputes, and each time, upon arrival, they discovered the victim had been injured by Appellant. N.T. 8/30/04 at 55-57, 60-62, 90-92, 94-99, 100-103, 66-69, and 74-80.

FN5. We note that, prior to trial, the Commonwealth filed notice of its intent to introduce evidence of the prior bad acts at issue in this appeal. Specifically, the Commonwealth indicated it was going to present evidence of the parties' history of domestic abuse and Appellant's repeated violation of numerous PFA orders. In response, Appellant filed a motion in limine expressly seeking to exclude the evidence. Following a lengthy pre-trial hearing, the trial court denied Appellant's motion in limine and evidence relating to the pattern of domestic abuse was introduced at trial via several police officers.

Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

Commonwealth v. Drumheller, 570 Pa. 117, 135, 808 A.2d 893, 904 (2002) (quotation and quotation marks omitted).

It is axiomatic that evidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes. This rule is not without exception, however. Evidence may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character. It is well-established that reference to prior criminal activity of the accused may be introduced where relevant to some purpose other than demonstrating defendant's general criminal propensity. Thus, evidence of other crimes may be introduced to show

(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme or plan; and (5) identity. The evidence may also be admissible to impeach the credibility of a testifying defendant; to show that the defendant has used the prior bad acts to threaten the victim; and in situations where the bad acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development. In order for evidence of prior bad acts to be admissible as evidence of motive, the prior bad acts must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances.

Commonwealth v. Melendez-Rodriguez, 856 A.2d 1278, 1283 (Pa. Super. 2004) (quotation marks and quotation omitted). "Furthermore, evidence of prior abuse between a defendant and a homicide victim tending to establish motive, intent, malice, or ill will is generally

admissible." <u>Commonwealth v. Passmore</u>, 857 A.2d 697, 711 (Pa. Super. 2004) (citation omitted). Moreover, the appellate courts have held that there is no set express time limitation on when evidence of prior abuse becomes inadmissible. *See* <u>Drumheller</u>, *supra*; <u>Commonwealth v. Lilliock</u>, 740 A.2d 237 (Pa. Super. 1999).

Here, the evidence established that, since 1993, police officers responded to the parties' residence for numerous incidents where Appellant had beaten the victim, several times in violation of an existing PFA order. The evidence suggests that the abuse by Appellant of the victim continued to escalate until Appellant ultimately murdered the victim. The challenged evidence shows the chain or sequence of events which formed the history of the case, is part of the natural development of the case, and demonstrates Appellant's motive, malice, intent, and ill-will toward the victim. Therefore, the trial court did not err in permitting the evidence to be introduced at trial.

<u>Commonwealth v. Jackson</u>, 900 A.2d at 939 -941.

Here, the state court's decisions are not clearly contrary to federal law as determined by the Supreme Court of the United States. Nor are the state court's decisions an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. In order for Petitioner to succeed on his claims it is not enough to convince a federal court that in its independent judgment the state court applied the law incorrectly, it must have applied the law in an "objectively unreasonable manner." <u>Bell v. Cone</u>, 535 U.S. at 698-699. Petitioner has not made such a showing and, therefore, is not entitled to habeas relief with respect to his first claim.

### D. Excessive Sentence

In his second claim, Petitioner claims that his sentence is manifestly excessive and that the sentencing guidelines are fundamentally unfair. Petitioner is not entitled to habeas corpus relief with respect to this claim as he has failed to allege the denial of any federal constitutional right. In this regard, a state prisoner may seek federal habeas corpus relief only if he is in custody in violation of

the Constitution or federal law. <u>Smith v. Phillips</u>, 455 U.S. 209 (1982); <u>Geschwendt v. Ryan</u>, 967 F.2d 877 (3d Cir.), *cert. denied*, 506 U.S. 977 (1992); <u>Zettlemoyer v. Fulcomer</u>, 923 F.2d 284 (3d Cir.), *cert. denied*, 502 U.S. 902 (1991). Thus, a writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts. <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982).

Generally, sentencing is a matter of state criminal procedure and does not fall within the purview of federal habeas corpus. <u>Wooten v. Bomar</u>, 361 U.S. 888 (1959). It necessarily follows that a criminal sentence cannot be attacked in a habeas corpus proceeding unless the sentencing court lacked jurisdiction to impose it or committed a constitutional error that made the sentence or underlying conviction fundamentally unfair. <u>United States v. Addonizio</u>, 442 U.S. 178, 186 (1979); <u>Gleason v. Welborn</u>, 42 F.3d 1107 (7th Cir. 1994), *cert. denied*, 514 U.S. 1109 (1995); <u>Bean v. United States</u>, 679 F.2d 683 (7th Cir. 1982). Thus, a federal court will not normally review a state sentencing determination that falls within the statutory limit, <u>Williams v. Duckworth</u>, 738 F.2d 828, 831 (7th Cir. 1984), as the severity of a sentence alone does not provide a basis for habeas relief. <u>Smith v. Wainwright</u>, 664 F.2d 1194 (11th Cir. 1981) (sentence within statutory limits can not be attacked in habeas proceeding); <u>United States v. Myers</u>, 374 F.2d 707 (3d Cir. 1967).

The discussion above makes clear that Petitioner can receive federal habeas corpus relief only if he can show that his sentence violates his constitutional rights. In this regard, the Eighth Amendment prohibits the imposition of cruel and unusual punishments. In <u>Solem v. Helm</u>, 463 U.S. 277, 284 (1983), the United States Supreme Court held that the Eighth Amendment prohibits "not only barbaric punishments, but also sentences that are disproportionate to the crime committed." In so concluding, the court employed a proportionality analysis that weighed the following factors:

the gravity of the offense and the harshness of the penalty; a comparison of the sentence imposed for more serious crimes in the same jurisdiction; and a comparison of the sentences imposed for the same crime in other jurisdictions.

Almost a decade later, the Supreme Court decided <u>Harmelin v. Michigan</u> 501 U.S. 957 (1991), which concerned the issue of whether the Eighth Amendment requires a proportionality guarantee in non-capital cases. In <u>Harmelin</u>, the Supreme Court reviewed a claim that the punishment imposed, life in prison without the possibility of parole, was grossly disproportionate to the offense committed, possession of more than 650 grams of cocaine. While <u>Harmelin</u> did not contain a majority opinion with respect to the issue, two justices, Scalia and Rhenquist, concluded that the Eighth Amendment does not contain a proportionality guarantee and, for that reason, the sentence could not be considered to be unconstitutionally disproportionate. <u>Harmelin</u>, 501 U.S. at 995 (concluding that "[s]evere, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history."). Applying <u>Harmelin</u>, the federal courts have concluded that "only an extreme disparity between crime and sentence offends the Eighth Amendment." <u>United States v. Marks</u>, 209 F.3d 577, 583 (6th Cir. 2000).

Petitioner's sentence is within the permissible statutory limits under Pennsylvania law. Moreover, it is not grossly disproportionate or extreme. *See, e.g.*, <u>Commonwealth v. Christmas</u>, Crim. No. 908 EDA 2009, 2010 WL 2090336, 3 (Pa. Super. May 26, 2010) (twenty-two and one-half (22 ½) to forty-five (45) years for third degree murder); <u>Commonwealth v. Harris</u> , 979 A.2d 387, 390 (Pa. Super. 2009) (20 to 40 years' incarceration for third degree murder, a consecutive 20 to 40 years' incarceration for conspiracy, and a consecutive two and one half to five years for

possessing instruments of crime); Commonwealth v. Macias, 968 A.2d 773 (Pa. Super. 2009) (holding that sentence of 20 to 40 years for third degree murder was reasonable); Commonwealth v. Yasipour, 957 A.2d 734 (Pa. Super. 2008) (holding that imposition of a 20 to 40 year prison sentence for third-degree murder conviction following verdict of guilty but mentally ill was not cruel and unusual punishment).

Finally, he has not shown that he was denied due process with respect to the sentencing guidelines, which include a 20-year sentence at the top end of the minimum term of the standard sentence for third-degree murder regardless of a defendant's prior record score. *See* Commonwealth v. Pittman, 737 A.2d 272 (Pa. Super. 1999). As Petitioner has failed to demonstrate any constitutional violations with respect to his sentence, his sentencing claim cannot provide a sufficient basis for federal habeas corpus relief.

### E. Insufficient Evidence

Petitioner's third claim is that the evidence was insufficient to support a guilty verdict of murder in the third degree. Where a petitioner challenges his incarceration on the ground that the evidence was insufficient to support his conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Under this standard, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. *Accord* Moore v. Deputy Commissioner(s) of SCI-Huntington, 946 F.2d 236, 243 (3d Cir. 1991), *cert. denied*, 503 U.S. 949 (1992). A federal

14

court must apply this standard " 'with explicit reference to the substantive elements of the criminal offense as defined by state law.' " Orban v. Vaughn, 123 F.3d 727, 731 (3d Cir. 1977) (quoting Jackson, 443 U.S. at 324 n. 16), *cert. denied*, 522 U.S. 1059 (1988). *See also* Jackson v. Byrd, 105 F.3d 145, 149 (3d Cir.) (federal habeas courts look to the evidence the state considers adequate to meet the elements of a crime governed by state law), *cert. denied*, 520 U.S. 1268 (1997). The jury, however, weighs the evidence and the federal courts must defer to the jury's resolution of conflicts in the evidence. Jackson, 443 U.S. at 326. Moreover, when a state appellate court thoroughly reviews the sufficiency of evidence, that court's determination is entitled to great weight. Parke v. Raley, 506 U.S. 20, 36 (1993). This deferential test places a very heavy burden on the appellant. United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir. 1995).

The test for insufficiency of evidence is the same under both Pennsylvania and federal law. *See* Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227, 1233 (3d Cir. 1992), *cert. denied*, 506 U.S. 1089 (1993); Commonwealth v. Bricker, 525 Pa. 362, 581 A.2d 147 (1990) (an appellate court must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offenses charged).

Under Pennsylvania law, third-degree murder is defined "all other kinds of murder" other than first degree murder or second degree murder. 18 Pa. Cons. Stat. § 2502(c). To support a third degree murder conviction, the Commonwealth must prove a defendant committed the killing with malice aforethought. Commonwealth v. MacArthur, 427 Pa. Super. 409, 629 A.2d 166, 167-68 (1993).

> Malice consists of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social

duty, although a particular person may not be intended to be injured. Moreover, malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury.

Commonwealth v. Cottam, 420 Pa. Super. 311, 342, 616 A.2d 988, 1004 (1992) (citations omitted).

Significantly, the Commonwealth is not required to prove intent to harm as part of its proof that a

defendant acted with malice. Commonwealth v. Miller, 426 Pa. Super. 410, 416, 627 A.2d 741, 744

(Pa. Super.1993).

Petitioner claims that there was not enough evidence to support a finding of malice but that

the evidence instead showed heat of passion, which would mitigate the murder to voluntary

manslaughter. The evidence produced at Petitioner's trial was more than adequate for the jury to

conclude that Petitioner was guilty of third degree murder. In this regard, the Trial Court found as

follows.

> As noted above, Scott sustained "remarkably extensive" bleeding into the conjunctiva of her eye, which was consistent with compression of the neck lasting approximately three (3) minutes. The force the Defendant used to strangle her was so great, he actually left a bruise in the shape of his finger on her neck. The mechanism of the injury was such that it required sustained, prolonged force, which was certainly consistent with a conscious disregard as to serious bodily injury and the hardness of heart and wickedness of deposition [sic] required for a finding of malice.

> Perhaps most telling is the Defendant's own description of the killing. Although at trial, he claimed not to remember the killing, he did give a full confession to the police following his arrest:

Q.   [Ms. Pellegrini] What else did he say?

A.   [Officer Ciuffi] Apparently, he said that a bit of an argument ensued between the two and Dionne was poking him in the face with her finger. At that time, Mr. Jackson stated he stood up and grabbed her by

both arms, threw her down on the couch and told her that's enough.

He said, "the next time I go jail, it is going to be for something good." That's when he let her go. She stayed lying on the couch.

. . . Mr. Jackson then went on to tell us that he was sitting on the, I guess it is a love seat or another chair that was adjacent to Ms. Scott, and he had told myself and Detective McKenith that he was sitting there thinking about killing her, and he said, in his exact words, "It was almost like I was plotting it."

Then, at that time, he said he got up and walked into what was like a dining room that was connected to the living room, walked back towards the living room, and he said that's when he noticed the vacuum cleaner, and he said that's when he grabbed the cord and wrapped it around her neck.

Q.    What did he say happened next?

A.    He said as that was happening, Dionne was calling out for her son, but apparently he didn't stop, and he said that's how she ended up on the floor.

Q.    What did he tell you? What did he tell you next?

A.    During that time, prior to him saying that she was calling out for her son, she was asking him to stop.

The Defendant's own statements establish the malice necessary for third degree murder. The Defendant strangled and smothered Scott for several minutes, while she begged for him to stop and tried to call for her 13 year-old son. The evidence was clearly sufficient to establish malice and therefore this claim must also fail.

Doc. No. 15-2, pp. 45-46.

Petitioner has not demonstrated that the Trial Court's determination with respect to his

insufficient evidence claims is contrary to, or an unreasonable application of, clearly established

federal law. Accordingly, Petitioner is not entitled to habeas corpus relief from this federal court with respect to his third claim.

## F. Ineffective Assistance of Counsel

Petitioner's last claim is that his appellate counsel was ineffective for failing to challenge Petitioner's right to a jury of his peers. Petitioner asserts that he wanted to raise a jury selection claim on appeal based on <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), because he is black and his jury consisted of eight white women and four white men and there were only two black females in his jury selection pool. Petitioner's trial counsel preserved this issue with an objection on the record prior to trial, which the Trial Court overruled.

Petitioner did not raise this claim in his direct appeal; nor did he raise this claim in his PCRA proceeding. The following discussion reveals that Petitioner has procedurally defaulted this claim by failing to properly present it to the Pennsylvania courts in accordance with applicable Pennsylvania law.

In this respect, in order to comply with the exhaustion requirement in 28 U.S.C. § 2254, Petitioner was required to present all of his federal habeas claims to the Pennsylvania courts in his direct appeal or in his PCRA proceeding. Because he failed to do so, this Court must determine whether Petitioner has any other available state court remedy through which he can present his unexhausted claims to the Pennsylvania courts. Under Pennsylvania law, the exclusive remedy to challenge a conviction following direct appeal is through a PCRA proceeding brought in accordance with the Post Conviction Relief Act. *See* 42 Pa. Cons. Stat. § 9542. Under the PCRA, a petitioner may bring a second PCRA petition only as provided for in the PCRA, as set forth below.

      (b)     Time for filing petition.--

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

> (I) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

(3) For purposes of this subchapter, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.

(4) For purposes of this subchapter, "government officials" shall not include defense counsel, whether appointed or retained.

42 Pa. Cons. Stat. § 9545(b). The Supreme Court of Pennsylvania has held that the PCRA's timeliness requirements are mandatory and jurisdictional in nature; thus, no court may properly disregard or alter them in order to reach the merits of the claims raised in a PCRA petition that is filed in an untimely manner. *See, e.g.*, Commonwealth v. Murray, 562 Pa. 1, 5, 753 A.2d 201, 202-203 (2000); Commonwealth v. Fahy, 558 Pa. 313, 328-29, 737 A.2d 214, 222 (1999); Commonwealth v. Peterkin, 554 Pa. 547, 722 A.2d 638, 641 (1998).

Under Pennsylvania law, the only potential state remedy that Petitioner may pursue to raise his unexhausted claim is a second PCRA petition. In order for him to be able to file a second PCRA now, he must allege facts that show that: 1) the failure to raise the claim previously was the result of interference by government officials; 2) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or 3) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively. 42 Pa. Cons. Stat. § 9545(b)(1). Petitioner's habeas petition does not allege any of the three exceptions listed above. Consequently, he is precluded from presenting his unexhausted claim in a second PCRA petition based on the time limitations set forth in the PCRA. These time limitations are an independent and adequate state law ground sufficient to invoke the procedural default doctrine for purposes of federal court review. *See* Lines v. Larkin, 208 F.3d 153, 165 (3d Cir. 2000).

As stated previously, this federal court may not review Petitioner's defaulted claim unless he demonstrates cause and prejudice for his default or establishes a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). To satisfy the cause standard, a petitioner must demonstrate that some objective factor external to the defense impeded his or her efforts to raise the claim in state court. McCleskey v. Zant, 499 U.S. at 493 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must demonstrate that the error worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions, not merely that the error created a "possibility of prejudice." Carrier, 477 U.S. at 494.

In order to establish prejudice to excuse a procedural default, a petitioner has to convince the federal court that there is a "reasonable probability," not a mere possibility, that the result of the trial would

have been different if the evidence at issue had been disclosed to the jury.  Strickler v. Greene, 527 U.S. 263, 289 (1999).  " 'The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.' "  *Id*. at 289-90 (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)).  In other words, the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.  *Id*. at 290 (internal quotation omitted).  It is the defendant's burden to establish a reasonable probability of a different result. *Id*. at 291 (emphasis deleted).  Employing the prejudice test set forth above, it is clear that the Petitioner has failed to establish the prejudice required to overcome his procedural default for failing to raise his Batson claim in timely manner.

Finally, Petitioner also has not demonstrated that a fundamental miscarriage of justice will result from the failure of this Court to review his claim.  In Schlup v. Delo, 513 U.S. 298 (1995), the Supreme Court explained the narrow class of cases implicating a fundamental miscarriage of justice.  Specifically, the Court defined the miscarriage of justice exception by holding that a habeas petitioner is required to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Id*. at 327 (quoting Murray v. Carrier, 477 U.S. at 496).  The Court instructed that "[t]o be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial."  *Id*. at 324.  The Court further explained that "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.  The petitioner thus is required to make a stronger showing than that needed to establish prejudice."  *Id*. at 327.

The federal courts, including the Court of Appeals for the Third Circuit, are in agreement that, in order to show a fundamental miscarriage of justice under the Schlup standard, a petitioner must offer new or reliable evidence in support of his claim of factual innocence. *See, e.g.*, Keller v. Larkins, 251 F.3d 408, 415-16 (3d Cir. 2001) ("To show a fundamental miscarriage of justice, a petitioner must demonstrate that he is actually innocent of the crime by presenting new evidence of innocence.") (citations omitted); Bannister v. Delo, 100 F.3d 610, 624 (8th Cir. 1996), *cert. denied*, 521 U.S. 1126 (1997); Holloway v. Jones, 166 F.Supp.2d 1185 (E.D. Mich. 2001); Alexander v. Keane, 991 F.Supp. 329 (S.D.N.Y. 1998). Petitioner has failed to meet his burden in this regard. Consequently, he is not entitled to habeas corpus relief with respect to his fourth claim.

### G. Certificate of Appealability

Section 2253 generally governs appeals from district court orders regarding habeas petitions. Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a State court unless a certificate of appealability has been issued. A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2). Here, the record fails to show a violation of Petitioner's constitutional rights. Accordingly, a certificate of appealability should be denied.

### III. <u>CONCLUSION</u>

Based on the discussion above, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B) & (C)] and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen days from the date of the service of this report and recommendation to file written objections thereto. Any party

opposing such objections shall have fourteen days from the date on which the objections are served to file its response. A party's failure to file timely objections may constitute a waiver of that party's appellate rights.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

Dated: June 2, 2010

cc:     Cameron Shawn Jackson, GA6318
        SCI Smithfield
        PO Box 999
        1120 Pike Street
        Huntingdon, PA 16652